IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| MARY ANN SANCHEZ ELIZONDO, § | |
| § | |
| v. § | A-13-CA-0081-AWA |
| § | |
| CAROLYN W. COLVIN,[1] § | |
| ACTING COMMISSIONER OF THE § | |
| SOCIAL SECURITY § | |
| ADMINISTRATION. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are:  Plaintiff Mary Ann Sanchez Elizondo's Complaint seeking reversal of the final decision of the Social Security Administration (Dkt. # 1); Defendant Carolyn W. Colvin's Answer (Dkt. No. 10); Plaintiff's Brief in Support of Claim (Dkt. # 16); and Defendant's Brief in Support of the Commissioner's Decision (Dkt. # 18).  Also before the Court is the Social Security record filed in this case (Cited as "Tr.").

**I.  GENERAL BACKGROUND**

Plaintiff Mary Ann Sanchez Elizondo ("Elizondo") filed her application for a period of disability and disability insurance benefits on February 23, 2010.  Tr. at 15.  Elizondo also filed a Title XVI application for supplemental security income on February 23, 2010.  *Id*.  In both applications, Elizondo alleged disability beginning on December 1, 2007.  *Id*.  Elizondo's claims were denied initially on July 6, 2010, and upon reconsideration on October 25, 2010.  Tr. at 93-98, 112.  After Elizondo filed a written request for a hearing, a hearing was held before an

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration following the expiration of Michael J. Astrue's six-year term as Commissioner.

Administrative Law Judge ("ALJ") on April 21, 2011. Tr. at 15. A second hearing was held before an ALJ on August 26, 2011. *Id.* On November 4, 2011, the ALJ issued a decision finding that Elizondo was not disabled. After the Appeals Council declined to review Elizondo's case on October 11, 2012, the ALJ's decision became the final administrative decision of the Commissioner for purposes of the Court's review pursuant to 42 U.S.C. § 405(g). Elizondo filed the instant lawsuit on January 30, 2013, pursuant to 42 U.S.C. § 405(g), requesting that the Court reverse and remand the ALJ's decision for an award of benefits or, in the alternative, for further administrative proceedings. Dkt. No. 16 at 12.

## II.  STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is disabled and unable to engage in "substantial gainful activity" the Social Security Commissioner employs a five-step analysis:

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled regardless of the medical findings;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520. A finding of no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills [his] burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence constitutes more than a scintilla of evidence but less than a preponderance–in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 172 (5th Cir. 1995).

The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the Court cannot reconsider the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Thus, the Court may not "reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [its]

judgment for the [Commisioner's], even if the evidence preponderates against the [Commissioner's] decision." *Harrell v. Brown*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g).

### III.  FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After considering all of the evidence before her, the ALJ determined that Elizondo meets the insured status requirements of the Social Security Act through June 30, 2011, and that she has not engaged in substantial gainful activity since the alleged onset date of her disabilities, December 1, 2007, under 20 C.F.R. § 404.1571 *et seq.* and 20 C.F.R. § 416.971 *et seq.* Tr. at 18. The ALJ found that Elizondo had severe impairments of (1) lumbar degenerative disc disease, (2) borderline intellectual functioning, and (3) depression under 20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c). Tr. at 18. However, the ALJ found that Elizondo did not have an impairment nor combination of impairments that meets or medically equals the severity of any of the listed impairments under the regulations. *Id.* The ALJ concluded that Elizondo has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.971(a) with occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps or stairs, but should avoid unprotected heights, hazardous or moving machinery, and climbing of ropes, ladders, or scaffolds. Tr. at 21. The ALJ found that Elizondo is able to perform simple, routine, repetitive tasks in occupations requiring the levels of Reasoning, Math, and Language ("RML") described in the *Dictionary of Occupational Titles*, but that Elizondo should only have

incidental contact with the public and only occasional interaction with coworkers.  *Id.*  Though the ALJ found that Elizondo is unable to perform any past relevant work under 20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965, considering her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. at 28–29.  Consequently, the ALJ found that Elizondo was not under a disability as defined by the Social Security Act and denied Elizondo's application for a period of disability and disability insurance benefits as well as her application for supplemental security income.  Tr. at 30.

## VI.  ANALYSIS

Elizondo alleges that the ALJ's finding that she is not disabled is not supported by the substantial evidence of the record and is the result of legal error.  Specifically, Elizondo argues that the ALJ (1) failed to follow the treating physician rule and give controlling weight to her physician, (2) failed to obtain additional psychological and intellectual testing, and (3) erred in finding that Elizondo retains the ability to perform other work existing in significant numbers in the national economy.

Elizondo alleges that the ALJ was required to obtain additional standardized intelligence testing to determine whether she was mildly mentally retarded or borderline in her intellectual functioning abilities.  In making this assertion, Elizondo relies on the federal regulation stating that "[s]tandardized intelligence test results are essential to the adjudication of all cases of mental retardation that are not covered under the provisions of 12.05A." 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Elizondo claims that the ALJ failed to fully develop the record by failing to obtain additional

psychological testing after the ALJ chose not to rely on the tests provided by Kelli Foulkrod.  The Court agrees.  Listing 12.05, Mental Retardation provides in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> * * *
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function. . . .

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1 at § 12.05.  Thus, a "valid" IQ score is needed to properly evaluate whether the claimant meets the Listing.  *Brown v. Astrue*, 2012 WL 2133633, at * 6 (W.D. La. May 25, 2012).

On May 7, 2011, Elizondo underwent a psychological evaluation with Kelli Foulkrod, M.S., a licensed psychological associate, at the request of her counsel.  Tr. 499-504.  Elizondo received a verbal IQ score of 55, a nonverbal IQ score of 100, and a composite IQ score of 82 on the *Kaufmann Brief Intelligence Test*, Second Edition ("KBIT2").  Tr. at 501.  Based on the results of the KBIT2, Ms. Foulkrod opined that Elizondo's composite IQ score "is not an accurate description of her ability due to the significant discrepancy between her verbal and nonverbal scores."  *Id.* Elizondo also obtained scores in the "very poor" range on the *Gray Oral Reading Test*, Fourth Edition ("GORT4"), divergent scores on the written expression sub-tests of the *Wechsler Individual Achievement Test*, Third Edition ("WIAT3"), and an invalid result on the *Minnesota Multiphase*

6

*Personality Inventory-2* Restructured Form ("MMPI2-RF"). Ms. Foulkrod opined that these results indicate Elizondo can read and understand individual words but cannot derive meaning from sentences, that she is unable to communicate effectively in written form, and that she has a poor reading ability. Tr. at 500-02. Based on these test results and her psychological evaluation, Ms. Foulkrod gave Plaintiff a diagnostic impression of major depressive disorder, recurrent, mild mental retardation, cocaine dependence (in full remission) and assessed Plaintiff a Global Assessment of Functioning ("GAF") of 35.[2] Ms. Foulkrod further opined that Plaintiff's physical limitations caused by her back injury and her left leg "markedly impair her ability to work for extended periods over the course of a day." Tr. at 503. In addition, she found that Plaintiff's "psychological symptoms of a major depressive episode in combination with cognitive limitations caused by mild mental retardation severely impair her abilities to self-motivate, self-direct, and sustain attention productively and appropriately." Tr. at 503-04.

The ALJ disregarded Ms. Foulkrod's psychological assessment of Elizondo finding that "Ms. Foulkrod is not an acceptable source for an opinion regarding the claimant's ability to perform work-related activities." Tr. at 23. Specifically, the ALJ discounted Ms. Foulkrod's assessment of Elizondo's poor language abilities because he found that she spoke in "complete, grammatically correct sentences at both hearings." Tr. 20. The ALJ also noted that the medical expert, Dr. Nancy

---

[2]GAF is a rating on a scale of 1 to 100 reflecting a clinician's judgment of an individual's overall level of psychological, social, and occupational, but not physical, functioning. a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 701 n. 2 (5th Cir. 2001) (quoting AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 2000)(DSM-IV)). Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed.2000) (DSM-IV-TR). A GAF score of 31 to 40 indicates a "major impairment" in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.*

Tarrand, disagreed with Foulkrod's assessment of Plaintiff.  *Id*.  Dr. Tarrand testified that because Ms. Foulkrod did not use the "usual" IQ test used in disability evaluations (e.g, the Wechsler Adult Intelligence Scale ("WAIS") test), it was difficult for her to interpret the IQ scores.  Tr. at 69-70.  Dr. Tarrand also opined that the scores Elizondo received on the non-standard tests were inconsistent with Elizondo's adaptive functioning capacity.  *Id.* at 69.  Dr. Tarrand testified that because there was a significant difference between the verbal and performance IQ scores, it may indicate that Plaintiff has a learning disability instead of mental retardation.  *Id*.  The ALJ found that Elizondo's low test scores assessed by Ms. Foulkrod could have been the result from "symptom exaggeration or malingering." Tr. at 20.  Thus, the ALJ gave Dr. Tarrand's opinions "great weight" and found that Ms. Foulkrod's IQ assessment "not valid."  *Id.*

       The ALJ failed to fully and fairly develop the record regarding Elizondo's intellectual functioning in this case.  The only IQ scores in the record were those obtained by Ms. Foulkrod's testing.  While both the ALJ and the medical expert question the reliability of the IQ scores assessed by Ms. Foulkrod, there were no other standardized IQ test results in the record and there was evidence in the record showing that Elizondo had attended special education classes before dropping out of high school, Tr. at 60.  Accordingly, the ALJ should have ordered Elizondo to undergo further IQ testing to properly evaluate whether Elizondo met Listing 12.05.  *Reyes v. Astrue*, 2008 WL 2225672 at * 3 ("The ALJ does not have the discretion to ignore IQ evidence from a medical source without some contravening medical evidence."); *Brown v. Astrue*, 2012 WL 2133633, at * 6 (W.D. La. May 25, 2012) (remanding case so that claimant could undergo additional testing to obtain a valid IQ score where the IQ score in the record was unreliable since claimant smoked marijuana on the day of testing).

Based upon the foregoing, the Court finds that a sentence four remand under § 405(g) is appropriate in this case in order to ensure that the Commissioner properly considers Plaintiff's claim of disability. *See Buckner v. Apfel*, 213 F.3d 1006, 1010 (8th Cir. 2000) (finding that district court's remand should have been pursuant to sentence four, where purpose of the remand was to prompt additional fact finding and further evaluation of the existing facts). Accordingly, IT IS HEREBY **ORDERED** that the Commissioner's final administrative decision, which is the Administrative Law Judge's Hearing Decision, signed November 4, 2011, is **REVERSED** and the action is **REMANDED** to the Acting Commissioner for further administrative proceedings.

A district court remanding a case pursuant to sentence four of § 405(g) must enter judgment in the case, and may not retain jurisdiction over the administrative proceedings on remand. *See Istre v. Apfel*, 208 F.3d 517, 520-521 (5th Cir. 2000) (a sentence four remand must include a substantive ruling affirming, modifying or reversing the Secretary's decision). Therefore, the Court will enter a final judgment in this case in a separate order.

SIGNED this 14th day of January, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE